**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
WESTERN DIVISION**

| | | |
|---|---|---|
| SARAH BROCKWAY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case no: |
| ARLENE L. PETSCHKE TRUST NO. 102, | ) | Judge |
| ARLENE L. PETSCHKE, | ) | |
| ROBERT PETSCHKE, | ) | |
| SUSAN KIANI AND | ) | |
| LINCOLNVIEW APARTMENTS | ) | |
| | ) | |
| Defendants. | ) | |

**PLAINTIFF'S VERIFIED COMPLAINT**

NOW COME, Plaintiff, Sarah Brockway, by and through her attorneys at O'FLAHERTY

LAW, P.C., complain as follows against Defendants, Arlene L. Petschke Trust No. 102,

(hereinafter, "Trust') Arlene L. Petschke, (hereinafter "Arlene"), Robert Petschke, (hereinafter

"Robert") Susan Kiani, (hereinafter "Susan") and Lincolnview Apartments (hereinafter

"Lincolnview"), and in support of its verified complaint state as follows:

**JURISDICTION AND VENUE**

1. Plaintiff, Sarah Brockway, brings these claims for unlawful discrimination under The Fair

   Housing Act, 42 U.S.C §3601, *et. seq.,* and the Illinois Human Rights Act, 775 ILCS 5/3-

   101 *et. seq.* (the "IHRA").

2. Federal jurisdiction is conferred in this court pursuant to 28 U.S.C §§ 1331, 1367 and 42

   U.S.C § 3613.

3. Venue is proper in the Northern District of Illinois, Western Division pursuant to 28 U.S.C § 1391 because the events on which the claim is based occurred in the Northern District of Illinois, the subject property is located in the Northern District of Illinois, the Plaintiffs reside in the Northern District of Illinois and the Defendants conduct business in the Northern District of Illinois.

## PARTIES

4. Plaintiff is a physically disabled adult that currently resides with her 11-year-old minor physically disabled son that rents an apartment unit at Lincolnview at 203 W. McKinley Avenue in Hinckley, Illinois 60520 (hereinafter the "subject property").

5. Lincolnview, upon information and belief, is not an incorporated Illinois entity.

6. Trust, upon information and belief, may hold Lincolnview in this trust agreement.

7. Arlene is the landlord of the subject property.

8. Arlene is responsible for the management of the subject property.

9. Susan works for her mother, Arlene, cleaning the apartment building's common areas.

10. Robert holds himself out as a "Trustee" of the subject property.

11. Trust, Arlene, Robert, Susan, and Lincolnview are collectively referred to as "Defendants."

## FACTUAL ALLEGATIONS

12. On or about August 1, 2021, Plaintiff entered into a one-year lease for the residential apartment located on the subject property with an expiration date of August 2022

13. Plaintiff and her 11-year-old minor son have resided at the subject property since the beginning of the lease.

14. Plaintiff and her son both suffer from a connective tissue disorder, Ehlers-Danlos Syndrome, that makes it difficult to stand and walk for long periods of time.

15. Plaintiff and her minor son both occasionally use a wheelchair or a walker to assist with their mobility.

16. On or about October 2021, due to Plaintiff's and her son's physical handicaps, Plaintiff requested a handicapped parking space near the entrance of her unit.

17. The parking spot closest to Plaintiff's unit is surrounded by parking blocks preventing the use of mobility aids.

18. There are no other designated handicapped spaces near Plaintiff's unit on the subject property and no reasonable accommodations have been made to resolve the issue.

19. Plaintiff has requested a ramp to assist her mobility and accessibility to her unit at the subject property. No reasonable accommodations have been made to assist the Plaintiff.

20. Plaintiff has been informed by other tenants that her minor son was referred to as a "retard" by the Defendants. The word "retard" is defamatory and alludes to disclosing Sarah's minor son's mental faculties.

21. To help treat and manage pain related to his Ehlers-Danlos Syndrome, Plaintiff's son's doctor recommended the use of an Emotional Support Animal (hereinafter "ESA") on or about October 25, 2021

22. During her tour of the Defendants' unit, prior to her son being prescribed an ESA, Plaintiff was informed by Defendants that they "only show people with emotional support animals the property, but don't intend to rent to them."

23. Plaintiff's son received two forms of documentation verifying the need for an ESA, one from his primary care physician and one from his psychiatrist.

24. Plaintiff immediately informed Defendants that she had the necessary documentation for an ESA and that she would be getting a dog for her son.

25. On or about December 20, 2021, Plaintiff's minor son brought home an ESA Corgi.

26. After the Plaintiff brought home the ESA, the Defendants began referring to the ESA as a pet and stating that they were going to begin to allow their tenants to own pets for a $5,000 non-refundable charge.

27. Defendants turn off the electricity in the common areas or use small 25-watt bulbs in the common areas at night which makes it very difficult for two handicapped individuals to navigate the apartment building when it is dark.

28. Defendants refuse to salt or otherwise de-ice the sidewalks and parking lots at the subject property making it dangerous for Plaintiff and her son to navigate.

29. Defendants have failed to properly maintain the property and clean the common areas causing debris to accumulate in the common areas of the subject property making it difficult for the Plaintiff and her minor son to navigate the areas with their wheelchairs and walkers.

30. Robert has distributed several makeshift cigarette disposal bins or "arson jars" across the subject property.

31. The arson jars are constructed with a plastic water jug and a pvc pipe with a hole drilled into the side.

32. The materials used to construct the arson jars are designated as flammable and, for the foregoing reason, Plaintiff is unable to use them to safely dispose of her cigarette butts.

33. Upon arrival at the subject property, Plaintiff realized that the door locks stick to the extent that keys bend when attempting to lock and unlock the door and the doors do not properly close.

34. Plaintiff reported this to Defendants, requesting that the locks and doors be fixed.

35.  The Defendants have not taken steps to fix the locks and the doors.

36. On or about September 20, 2021, Plaintiff discovered black mold in her utility room and informed defendants.

37.  Robert responded to the maintenance request, only spraying Lysol as a mitigation effort.

38. Plaintiff and her minor son are immunocompromised; the presence of mold in their living area can severely, negatively affect them.

39. On or about September 27, 2021, Robert informed the Plaintiff that his mother's dead dog was being stored in the basement under her next-door neighbor's apartment and that it was "ripe."

40. Because of this information, Plaintiff informed Arlene, the DeKalb County Health Department, and the Hinkley Police Department of the location of the dog carcass.

41. Neither Arlene nor the two other agencies were able to assist Plaintiff with the removal of the dog carcass; it is unknown what happened with the carcass.

42. From August 2021 to September 2021, Defendants entered her unit an unknown number of times without notice or permission.

43.  On or about September 30, 2021 Plaintiff purchased and installed four security cameras that she placed around the inside of her unit.

44. Since September 30, 2021, Defendants have refused to respond or remedy any of the Plaintiff's maintenance requests.

45. On or about October 4, 2021, Plaintiff began to attend town hall meetings to encourage code enforcement at the subject property and to seek assistance for the issues that she faced at the subject property.

46. From October 2021 until on or about November 25, 2021, Robert parked his vehicle in front of the Plaintiff's unit and flashed his headlights repeatedly into Plaintiff's bedroom window.

47. Robert only stopped flashing his headlights into Plaintiff's bedroom window when Plaintiff's cousin parked her vehicle in the parking space.

48. Robert occasionally drives by Plaintiff's window where she works from home and gives her his middle finger.

49. Robert has placed cameras throughout the apartment building, including a camera directed at Plaintiff's bedroom window.

50. Plaintiff called the Hinckley Police Department regarding the location of the camera and the Hinckley Police were unable or refused to remedy the situation.

<u>COUNT I</u>

**VIOLATION OF 42 U.S.C. §3604(f)(3)(B)**
**FAILURE TO ACCOMMODATE AND MODIFY**

51. Plaintiff restates and incorporates Paragraphs 1 through 50of this Complaint as if those allegations were forth herein.

52. Plaintiff and her son are handicapped individuals and members of a protected class under the Fair Housing Act pursuant to 42 U.S.C§3602(h).

53. The Fair Housing Act provides that "a refusal to permit, at the expense of the handicapped person, reasonable modifications of existing premises occupied… by such person if such modifications may be necessary to afford such person full enjoyment of the premises…" 42 U.S.C §3604(f)(3)(A).

54. The Fair Housing Act provides that "discrimination includes…a refusal to make reasonable accommodations in rules, practices, or services, when such accommodations may be

6

necessary to afford such person equal opportunity to use and enjoy a dwelling…" 42 U.S.C §3604(f)(3)(B).

55. Additionally, with regards to multifamily dwellings, the Fair Housing Act provides that "the public use and common use portions of such dwellings are readily accessible to and usable by handicapped persons" and there must be "an accessible route into and through the dwelling." 42 U.S.C §3604(f)(3)(C)(i-iii).

56. Throughout the duration of Plaintiff's tenancy at the subject property, she has requested reasonable accommodations and modifications to allow her and her minor son to use and enjoy her dwelling in the same manner as non-handicapped individuals residing in the subject property.

57. Plaintiff's requests accommodations and modifications are reasonable and necessary within the meaning of 42 U.S.C §3604(f)(3)(B).

58. Defendants have violated the law by failing to provide reasonable accommodations and modifications for Sarah and her son by not installing ramps, grab bars and providing a handicapped parking space.

59. Defendants have further violated 42 U.S.C. §3604(f)(3)(B) by allowing debris to accumulate in the common areas of the subject building, failing to properly light the common areas during the nighttime hours, and failing to salt the sidewalks and parking lots during the winter months, which makes it difficult for Sarah and her son to maneuver to common areas.

60. As a direct and proximate result of Defendant's wrongful refusal to grant Sarah and her son reasonable accommodations, Plaintiff and her son have suffered and will continue to suffer irreparable harm for which there is no adequate remedy at law.

61. As a result of Defendants' discriminatory practices, Plaintiff is entitled to compensatory damages, punitive damages, reasonable attorney fee and costs.

**WHEREFORE**, Plaintiff request that this court judgment for Plaintiff and against Defendants as follows:

a) Find that Defendants denied Plaintiff's reasonable accommodations request and unlawfully discriminated against Sarah and her son in violation of the Fair Housing Act, 42 U.S.C § 3604 et seq;

b) Order Defendants to immediately engage in the interactive process to provide Sarah and her son necessary accommodations to meet their needs.

c) Award Plaintiff such damages as would fully compensate her for her injuries caused by Defendants' discriminatory housing practices in violation of the Fair Housing Act,42 U.S.C. §3604 *et seq;*

d) Award Plaintiff punitive damages for Defendants' discriminatory housing practices in violation of the Fair Housing Act, 42 U.S.C. §3604 *et seq;* and

e) Award Plaintiff costs, expenses and reasonable attorney fees and such other relief as deemed just and proper under the circumstances.

## COUNT II

### VIOLATION OF 775 ILCS 5/3-102
### FAILURE TO ACCOMMODATE AND MODIFY UNDER THE ILLINOIS HUMAN RIGHTS ACT

62. Plaintiff restates and incorporates Paragraphs 1 through 50 of this Complaint as if those allegations were forth herein.

63. Plaintiff and her minor son have a disability and are members of a protected class according to the definition in 775 ILCS 5/1-103(I).

64. The IHRA provides that "it is a civil rights violation to refuse to permit, at the expense of the person with a disability, reasonable modifications of existing premises occupied… by such person if such modifications may be necessary to afford such person full enjoyment of the premises." 775 ILCS 5/3-102.1(C)(1).

65. Additionally, "the landlord may not increase for person with a disability any customarily required security deposit." *Id.*

66. With regards to multifamily dwellings, "the public use and common use portions of such dwellings are readily accessible to and usable by persons with a disability" and "an accessible route into and through the dwelling" must be available. 775 ILCS 5/3-102.1(C)(3)(a)(i).

67. Throughout the duration of Plaintiff's tenancy at the subject property, she has requested reasonable accommodations and modifications to allow her and her minor son to use and enjoy her dwelling in the same manner as non-handicapped individuals residing in the subject property.

68. Plaintiff's requests accommodations and modifications are reasonable and necessary within the meaning of 775 ILCS 5/3-102.1(C)(1).

69. Defendants have violated the statute by failing to provide reasonable accommodations and modifications for Sarah and her son by not installing ramps, grab bars and providing a handicapped parking space.

70. Defendants have further violated the statute by threatening to add an additional deposit for Plaintiff's minor son's ESA.

71. Defendants have further violated 775 ILCS 5/3-102.1(C)(3)(a)(i)) by allowing debris to accumulate in the common areas of the subject building, failing to properly light the

common areas during the nighttime hours, and failing to salt the sidewalks and parking lots during the winter months, which makes it difficult for Sarah and her son to maneuver to common areas.

72. As a direct and proximate result of Defendant's wrongful refusal to grant Sarah and her son reasonable accommodations, Plaintiff and her son have suffered and will continue to suffer irreparable harm for which there is no adequate remedy at law.

73. As a result of Defendants' discriminatory practices, Plaintiff is entitled to compensatory damages, punitive damages, reasonable attorney fee and costs.

**WHEREFORE**, Plaintiff request that this court judgment for Plaintiff an and against Defendants as follows:

a) Exercise its supplemental jurisdiction over this State Law claim;

b) Find that Defendants denied Plaintiff's reasonable accommodations request and unlawfully discriminated against Sarah and her son in violation of the Illinois Human Rights Act, 775 ILCS 5/3-102.

c) Order Defendants to immediately engage in the interactive process to provide Plaintiff and her son necessary accommodations to meet their needs.

d) Award Plaintiff such damages as would fully compensate her for her injuries caused by Defendants' discriminatory housing practices in violation of the Illinois Human Rights Act, 775 ILCS 5/3-102;

e) Award Plaintiff punitive damages for Defendants' discriminatory housing practices in violation of the Illinois Human Rights Act, 775 ILCS 5/3-102; and

f) Award Plaintiff costs, expenses and reasonable attorney fees and such other relief as deemed just and proper under the circumstances.

## COUNT III

### VIOLATION OF 775 ILCS 5/3-105.1
### HOSTILE ENVIRONMENT UNDER THE ILLINOIS HUMAN RIGHTS ACT

74. Plaintiff restates and incorporates Paragraphs 1 through 50 of this Complaint as if those allegations were forth herein.

75. Plaintiff and her minor son have a disability and are members of a protected class according to the definition in 775 ILCS 5/1-103(I).

76. The IHRA states, it is a civil rights violation to interfere, coerce, intimidate, threaten or interfere with any person in the exercise or enjoyment of any right granted or protected by Article three of the IHRA. 775 ILCS 5/3-105.1.

77. Plaintiff was subjected to intimidation, threats, and harassment while attempting to enjoy the privileges of her lease and requesting for reasonable accommodations of her living space.

78. Robert flashed his headlights in Plaintiff's bedroom window, directed cameras towards Plaintiff's bedroom window, and have refused to respond to multiple maintenance requests made by the Plaintiff, creating a hostile environment for Plaintiff at the subject property in violation of her rights under the IHRA.

**WHEREFORE**, Plaintiff request that this court judgment for Plaintiff and against Defendants as follows:

    a) Exercise its supplemental jurisdiction over this State Law claim;

    b) Find that Defendants created a hostile environment for Plaintiff and her son in violation of the Illinois Human Rights Act, 775 ILCS 5/3-105.1.

c) Order Defendants to immediately engage in the interactive process to provide Plaintiff and her son necessary accommodations to mitigate the hostile environment.

d) Award Plaintiff such damages as would fully compensate her for her injuries caused by Defendants' intimidation and harassment in violation of the Illinois Human Rights Act, 775 ILCS 5/3-105.1;

e) Award Plaintiff punitive damages for Defendants' intimidation and harassment practices in violation of the Illinois Human Rights Act, 775 ILCS 5/3-102; and

f) Award Plaintiff costs, expenses and reasonable attorney fees and such other relief as deemed just and proper under the circumstances.

Respectfully Submitted,

BY:/s/Matthew Hector
Attorney for Plaintiff

Matthew Hector
ARDC 6283058
O'Flaherty Law, P.C.
1515 Legacy Circle
Naperville, IL 60563
(630) 324-6666
matt.hector@oflaherty-law.com

## **VERIFICATION**

Sarah Brockway is individually named in this Complaint. Ms. Brockway, under the penalties as provided by law pursuant to Section 5/1-109 of the Illinois Code of Civil Procedure, certifies that the statements set forth in this instrument are true and correct, except as to matter stated to be on information and belief, and as to such matters she certifies as aforesaid that she verily believes the same to be true.

_____
Sarah Brockway