**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**WESTERN DIVISION**

| | | |
|---|---|---|
| SARAH BROCKWAY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No.  3:22 C 50116 |
| | ) | |
| ARLENE L. PETSCHKE TRUST NO. 102, | ) | Judge Rebecca R. Pallmeyer |
| ARLENE L. PETSCHKE, ROBERT | ) | |
| PETSCHKE, SUSAN KIANI and | ) | |
| LINCOLNVIEW APARTMENTS, | ) | |
| | ) | |
| Defendants. | ) | |

<u>**MEMORANDUM OPINION AND ORDER**</u>

Plaintiff Sarah Brockway and her minor son resided at LincolnView Apartments in Hinckley, Illinois from 2021 through 2022.  After the Brockways moved out, Ms. Brockway filed this lawsuit against her former landlord, Arlene Petschke, and Petsche's son and daughter, Robert Petschke and Susan Kiani.  Plaintiff alleges that Defendants violated the Fair Housing Act, 42 U.S.C. §3604(f)(3)(B) ("FHA") by failing to provide accommodations for Plaintiff's disabilities.[1] Defendants now move [61] for summary judgment and judgment on the pleadings, arguing that Plaintiff did not provide them with notice of the disabilities for which she required accommodation. Plaintiff contends that a letter requesting accommodation provided Defendants with notice of her disability.  Because a reasonable jury could find that the letter provided adequate notice that Plaintiff is disabled, Defendants' motion for summary judgment is denied.

---

[1]     Plaintiff also brings state law discrimination clams under the Illinois Human Rights Act (*see* Defs.' Mot. at 2), but both parties focus their briefing exclusively on the FHA claim; as Defendants note, awareness of the disability (the element on which they seek summary judgment) is a key element for all of Plaintiff's claims.

## **BACKGROUND**

The factual background is based on Defendants' Rule 56.1 statement [63] and supporting materials, including Plaintiff's deposition [63-1], Plaintiff's response [64] to Defendants' motion, and Plaintiff's Rule 56.1(b)(2) response [65].

Plaintiff was a tenant at LincolnView Apartments from August 1, 2021, to July 31, 2022. (Defendant's Local Rule 56.1 Statement of Undisputed Facts ¶¶ 2, 15 (hereinafter, "Defs.' 56.1").) Plaintiff suffers from Ehlers-Danlos syndrome, a connective tissue disorder that causes her to walk abnormally. (Pl.'s Dep. Tr. [63-1] at 19:1–7.) To manage her conditions, Plaintiff utilizes several mobility devices, including wrist braces, elbow braces, a power-assist wheelchair, and SERF bands.[2] (*Id*. at 28:1–13.) Because her apartment at LincolnView was not wheelchair accessible, however, Plaintiff only used her SERF bands (underneath her clothes) while on the premises. (*Id*. at 29:16–31:1.) Defendants never saw Plaintiff using any mobility device during her tenancy. (Defs.' 56.1 ¶ 17.) Plaintiff's minor son, who resided with her at LincolnView, also has Ehlers-Danlos syndrome. (Pl.'s Dep. Tr. at 22:22–24.) Her son never used any mobility device, including SERF bands, while at the apartment. (*Id.* at 31:17–32:3.)[3]

On October 12, 2021, Plaintiff sent a letter to Defendant Arlene Petschke requesting several repairs to the apartment, such as fixes to loose wiring, caulking, and remediation of mold. (October 12 Letter [63-2] at 2.) In addition to these requests for repairs, the October 12 Letter also includes an explicit request for "accommodations." The relevant paragraph states:

---

[2] SERF bands are elastic bands that Plaintiff wrapped from the knee to the waist to keep her legs in place. (Pl.'s Dep. Tr. at 28:8–11.) Plaintiff wore them underneath her clothing. (*Id.* at 30:19–22.)

[3] Despite reference to her son's disability in the complaint (*see* Compl. [1] ¶¶ 28–29) and discrimination against her son's disability in her deposition (Pl.'s Dep. Tr. at 39:22–40:1), Plaintiff admits that her son is not a party to this case, and that she is not bringing a claim on behalf of him in a representative capacity. (*See* Defs.' 56.1 ¶ 10, Pl.'s 56.1 Resp ¶ 10.)

> There is no handicapped parking at LincolnView. According to federal law you are required 1 spot for each of your buildings. There is also no handrails or ramp access. I am officially asking for accommodations for parking, and for safe access to the 203-building meaning, that the front walk will need to be made to accommodate handicap accessibility. With both ramps and handrails to accommodate safe entry. The back of the building, and other entrances may also need to be modified but I will leave that to the Village Coding department to decide.

(*Id.*) There is no other mention of Plaintiff's disability in the letter,[4] nor does Plaintiff contend that she had previously communicated that she had a disability to the Defendants.[5] Defendants do not appear to dispute, however, that Defendant Arlene Petschke received the October 12 Letter. (*See* Defs.' Mot. at 6 ("Defendants did not know that Plaintiff was allegedly disabled when Arlene received the Letter.").) Disappointingly, the record is unclear on whether Defendants responded to any of the repair requests made in Plaintiff's letter. In her deposition, Plaintiff states in general terms that there was "never any engagement" and Defendants "wouldn't enter the conversation" regarding her October 12 requests. (Pl.'s Dep. Tr. at 23:22–24; 39:5–6.)[6] Plaintiff has testified that she sent "other letters" after the October 12 Letter "pushing" for a response to the repair requests (*id.* at 21:23–24), but these letters are not in the record. In the absence of Defendants

---

[4]    The letter does include a doctor's note in support of a request for service animal for her son; but the letter does not mention the existence or the nature of her son's disabilities (LincolnView does not have a "no-pets" policy, and Plaintiff and her son did have a dog). (October 12 Letter at 2.)

[5]    In her deposition, Plaintiff suggests that she may have had a conversation with Defendant Bob Petschke to explain her unusual walk, but there is no evidence of this conversation elsewhere in the record and Plaintiff admits that she does not remember if she mentioned her disability specifically. (Pl.'s Dep. Tr. at 19:1–12; 22:12–15.) The court notes that any suggestion that Plaintiff communicated her disability directly to Defendants conflicts with her responses to Defendants' requests for admission, wherein she "affirmatively" states that disclosure of her disability was made "in the October 12 letter." (Pl.'s Resp. to Defs.' Req. for Admis. [63-4] at 2 (response to request no. 5).)

[6]    Plaintiff makes a fleeting reference in deposition to Defendant Arlene Petschke's having (or claiming to have) cancer that prevented her from responding to anything, alleging that "[s]he quite frequently used her illness as a reason not to participate in business." (*Id.* at 63:16–23.) This may (in part) explain why there was no response to the October 12 Letter, but there is no information about the nature of Defendant Arlene's illness or Plaintiff's awareness of the illness in the record, nor any details concerning the conversations in which Defendant Arlene allegedly made these claims.

3

acting, Plaintiff paid for some repairs herself (deducting the expense from her rent payment) (*id.* at 55:17–21); with respect to disability-related modifications (ramps, railings, and a parking space) to the common areas, the parties "never got to a point where we could even have [a] discussion" about sharing expenses. (*Id.* at 34:3–9.)

Defendants have not been deposed, but they deny having any knowledge of Plaintiff's disability. (Defs.' 56.1 ¶ 16.) Without otherwise commenting on the letter or on Plaintiff's request for repairs, each Defendant submitted a declaration denying they were informed of Plaintiff's disability and stating that they never witnessed her using a mobility device. (Ex. E to Defs.' 56.1 at 1–2 [63-5]; Ex. F to Defs.' 56.1 [63-6] at 1–2; Ex. G to Defs.' 56.1 [63-7] at 1–2.)

## DISCUSSION

The court will grant a motion for summary judgment only if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). The moving party has the burden of showing the evidence is insufficient to establish an essential element of the non-movant's claim, at which point all other facts are rendered immaterial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986). To sustain a claim for failure to accommodate under the FHA, a plaintiff must prove that "(1) the plaintiff had a disability; (2) the defendant was aware of disability; and (3) the defendant failed to reasonably accommodate the disability." *Watters v. Homeowners Ass'n at Pres. At Bridgewater*, 48 F.4th 779, 789 (7th Cir. 2022). It is uncontested in this case that Plaintiff had a disability, and that Defendants did not provide accommodations. The sole issue is whether Defendants were aware of Plaintiff's disability.

Because the elements are identical, a failure-to-accommodate claim under the FHA is governed by the same standards that apply to such claims under the Americans with Disabilities Act. *Geraci v. Union Square Condominium Ass'n*, 891 F.3d 274, 278 n.1 (7th Cir. 2018) (citing *Good Shepherd Manor Found., Inc. v. City of Momence*, 323 F.3d 557, 561 (7th Cir. 2003)). In the employment context, the Seventh Circuit has held that an employee seeking an

4

accommodation "has the initial duty to inform the employer of a disability before ADA liability may be triggered for failure to provide accommodations." *Beck v. Univ. of Wisconsin Bd. of Regents*, 75 F.3d 1130, 1134 (7th Cir. 1996). The Seventh Circuit has been careful not to overstate this duty, however, and has explained that "[t]his initial duty . . . requires at most that the employee indicate to the employer that she has a disability and desires an accommodation." *E.E.O.C. v. Sears, Roebuck & Co.*, 417 F.3d 789, 803 (7th Cir. 2005). Even where notice of the disability or request for accommodations is "ambiguous," if the employee (or tenant) provides notice "sufficient to notify the employer that the employee *may have a disability* that requires accommodation," the duty shifts to "the employer [to] ask for clarification." *Id.* (emphasis added). "[A]n employer cannot shield itself from liability by choosing not to follow up on an employee's requests for assistance, or by intentionally remaining in the dark." *Id.* This applies equally in the FHA context. *See Jankowski Lee & Assocs. v. Cisneros,* 91 F.3d 891, 895 (7th Cir. 1996), *as amended* (Aug. 26, 1996) ("If a landlord is skeptical of a tenant's alleged disability or the landlord's ability to provide an accommodation, it is incumbent upon the landlord to request documentation or open a dialogue.")

Here, there is no dispute that Plaintiff never explicitly mentioned her disability to Defendants. Plaintiff has done little to develop the record with respect to Defendants' knowledge, failing to take even one deposition of the Petschkes. The court is left to consider whether a reasonable jury could find that the October 12 Letter gave Defendants notice that Plaintiff "may have a disability that requires accommodation." *Sears,* 417 F.3d at 803. The case is a close one, but the court concludes that it does. As Plaintiff notes, the Letter makes several requests that allow the inference that Plaintiff was disabled and seeking an accommodation for that disability: it specifically requests "handrails," "ramps," and "handicap accessibility," and further states that "I am officially asking for accommodations for parking, and for safe access to the 203-building." (October 12 Letter at 2.) A reasonable jury could find that the *only* way to read this portion of the letter is as a statement that Plaintiff had a disability requiring accommodations and was "formally"

seeking accommodations for that disability. As Plaintiff puts it, "why would Plaintiff make a request for handicapped access and parking unless she was disabled?" (Pl.'s Mem. at 2.)

Defendants argue that the letter is far too generic and ambiguous to provide even the constructive notice Plaintiff now suggests. They interpret the Letter as "only outlin[ing] Plaintiff's understanding about what federal law and village code generally require for any apartment building," (Reply at 2) and observe that Plaintiff's request for accommodations is nestled amidst twelve paragraphs of complaints regarding ordinary repairs and maintenance in her unit (Defs.' Mem. at 3). The court agrees that the letter's general reference to the "Village Coding department" and requests for non-disability related repairs arguably cloud the issue. But this is a question of fact, not law. A jury could easily find that, despite these references, the relevant paragraph gave sufficient notice to Defendants that Plaintiff sought handicapped parking, handrails, and a ramp for a disability that required such accommodations.

Defendants also rely heavily on *Watters v. The Homeowners' Assoc. at the Pres. at Bridgewater*, 48 F.4th 779 (7th Cir. 2022). In *Watters*, the plaintiff, who suffered from a lung condition and post-traumatic stress disorder ("PTSD"), requested an accommodation from his homeowner's association ("HOA")—specifically, he asked defendant to build a privacy fence after his doctor recommended such a fence to alleviate his PTSD triggers. *Id.* at 783–84. HOA rules did not allow for constructing privacy fences. *Id.* at 793. Plaintiff had advised two members of the HOA about his lung condition, but he never disclosed that he suffered from PTSD, nor did his request for accommodation identify PTSD as the reason for his request. *Id.* at 793–94. Affirming summary judgment for the HOA on his failure-to-accommodate claim, the court held that the plaintiff's request was insufficient to sustain a claim of failure to accommodate because he failed to show that defendants had knowledge of his PTSD. *Id.* Defendants urge that *Watters* requires judgment in their favor in this case.

The court finds the case distinguishable, however. First, the court notes that the Seventh Circuit's discussion of the plaintiff's failure-to-accommodate claim against the HOA in *Watters* is

brief, and it is unclear what broad rule Defendants would have the court draw from the opinion. More importantly, *Watters* differs factually from this case. The HOA Defendant there was actually aware of one of the plaintiff's disabilities—his lung disease—giving the HOA members an affirmative reason to believe that plaintiff's request for a privacy fence was *unrelated* to a disability. Defendants did not have such conflicting information in this case. Second, a privacy fence (the accommodation requested in *Watters*) is an installation that would be desirable for many tenants with or without a disability—such that the request for a privacy fence, alone, could not *only* be read as an admission of a disability. The accommodations sought by Plaintiff—a parking space, handrails, and a ramp installed at the entrance of the building—are not so universally desirable.[7] A reasonable jury could find here, unlike in *Watters*, that only an individual with mobility difficulties would request such "handicap accessibility" accommodations, and that Defendants should have inferred a disability from the language of the request. Finally, *Watters* is distinct from this case because the HOA defendant responded to the plaintiff's request rather than ignore him. As the Seventh Circuit notes, in response to the plaintiff's privacy fence request, the HOA explained to the plaintiff that "The Fair Housing Act does not pertain to your request for a privacy fence due to disability," provided alternatives to "create a sense of privacy," and offered the plaintiff the opportunity to submit alternative designs for a fence. (*Id*. at 784.) At the very least, these communications gave the plaintiff the opportunity to respond and clarify the nature of his PTSD and continue a dialogue with the HOA. In contrast, Defendants here completely ignored Plaintiff's request and the interactive process. These factual differences are sufficient for the court to find that *Watters* is not directly applicable here, and that it is appropriate for a jury to determine whether the October 12 Letter sufficiently gave Defendants notice that Plaintiff was seeking

---

[7]     The court observes that had Plaintiff requested only a parking spot, *Watters* may have been a perfect match for this case, as the court, like Defendants, "could fill these pages with hypothetical reasons why a plaintiff would want a reserved parking space right outside of her own front door." (Reply at 2.) But Plaintiff's request for the parking space combined with the request for handrails, ramps, and "handicap accessibility" changes the analysis, and the court cannot as readily think of hypothetical reasons a non-disabled tenant would request such installations.

accommodation for her disability. Because Defendants do not meet the standard for summary judgment on this issue, and the underlying facts are discernible from Plaintiff's complaint (*see* Compl. [1] ¶¶ 16, 19), the court also finds that Defendants do not meet the standard for judgment on the pleadings under Rule 12(c).

## **CONCLUSION**

Defendants' motion for summary judgment and judgment on the pleadings [61] is denied. The parties are directed to submit a joint status report within 21 days proposing trial dates.

ENTER:

Date: July 11, 2025

_____
REBECCA R. PALLMEYER
United States District Judge